# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TROY G. HAMMER,

Plaintiff,

v.

KATHRYN LEWIS, AMANDA HERMAN, ABIGAYLE ELBE, FOREST COUNTY, and ROBERT ZAGAR,

Defendants.

Case No. 24-CV-1258-JPS

**ORDER**

Plaintiff, Troy G. Hammer, a prisoner, brings this action under 42 U.S.C. § 1983 pro se. ECF No. 1. On April 9, 2025, pursuant to 28 U.S.C. § 1915A, the Court screened his amended complaint and identified which claims may proceed. ECF No. 43. Plaintiff proceeds on the following three claims: (1) A Fourteenth Amendment claim against Defendants Abigayle Elbe ("Elbe"), Robert Zagar ("Zagar"), Amanda Herman ("Herman") (collectively the "County Defendants"), and Katherine Lewis ("Lewis") for their failure to protect Plaintiff from self-harm; (2) a state law negligence claim against Elbe, Zagar, Lewis, and Herman; and (3) a *Monell* claim against Forest County for its failure to train employees. *Id.* at 8.

Now pending before the Court are Defendants' two separate motions for summary judgment. ECF Nos. 89, 93. Plaintiff has not substantively responded to the motions for summary judgment and instead has filed numerous late requests to delay this case further. *See* ECF Nos. 102, 105, 107, 113. As described below, the Court will grant Defendants' motions for summary judgment on the federal claims, will relinquish supplemental jurisdiction on the state law claim, and will dismiss this case.

The Court first turns, however, to Plaintiff's multiple requests to reopen discovery. After two extensions, discovery in this case closed on September 30, 2025. *See* ECF No. 68. Several months later and following Defendants' motions for summary judgment, Plaintiff filed an untimely motion for an extension of time and multiple requests to reopen discovery. ECF Nos. 102, 105, 107. Despite months passing and numerous filings, Plaintiff has still not filed any substantive response to the motions for summary judgment or proposed facts. The Court will therefore deny Plaintiff's motion for an extension of time and motions to reopen discovery. Plaintiff was previously warned that extensions of time are rarely granted. ECF No. 29. Moreover, as discussed below, the Defendants' proposed facts are consistent with Plaintiff's own deposition testimony filed in this case, and therefore he is not prejudiced by proceeding to the merits of the summary judgment motions. Plaintiff's factual version of this case is well represented, and the Court finds that no material issues of fact exist. Instead, this case presents a legal question of whether Defendants' actions rose to the level of a constitutional violation. As such, the Court finds that further delay of this case would be inconsistent with the provisions found in Rule 1 of the Federal Rules of Civil Procedure to ensure the orderly and timely disposition of this case. The Court will therefore deny Plaintiff's motions to extend the response time and to reopen discovery.

Finally, the Court will deny as premature Plaintiff's motion for relief from judgment, ECF No. 113. Judgment has yet to be entered in this case and Plaintiff's motion was therefore premature. The Court therefore turns to the issue of whether summary judgment is appropriate in this case.

## 1. LEGAL STANDARD – SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

Defendants submitted proposed undisputed findings of fact with their motion. ECF No. 95. The facts are based on facts established through discovery and are consistent with Plaintiff's deposition testimony. The Court has supplemented Defendants' facts with additional facts from Plaintiff's deposition to present a fuller depiction of Plaintiff's side of the story. *See* Fed. R. Civ. P. 56(c)(3) (allowing the Court to consider other materials in the record). Thus, the following facts are from the proposed findings of fact with all facts taken in the light most favorable to Plaintiff as the non-moving party.

Plaintiff is a resident of Wisconsin whose most recent address outside of Forest County Jail was in Mole Lake, Wisconsin. On September

1, 2024, Deputy Nagai placed Plaintiff under arrest for probation violation for consumption of intoxicants and transported Plaintiff to the Forest County Jail ("FCJ"), and Plaintiff was booked into the facility. Plaintiff was on probation as part of a sentence for his conviction in Forest County Case Number 2010CF000006. Plaintiff was booked into the jail with his prescription glasses for his bilateral astigmatism and moderate (as opposed to mild or severe) bilateral myopia, i.e., near-sightedness.

Forest County maintains suicide-prevention and mental-health policies for identification, observation, and management of at-risk inmates. On August 18, 2024, during booking, Zagar observed Plaintiff answer "no" to being suicidal, while also repeatedly stating he would hurt himself; later that day, after Plaintiff began biting his arm, staff placed him in a restraint chair and logged fifteen-minute checks until removal. On August 19, 2024, after learning Plaintiff had been making suicidal comments, Officer McHugh administered the ASQ screening questions, placed Plaintiff in a suicide smock, and put him on suicide watch. Staff logged fifteen-minute checks until the observation period ended the following day. On August 20, 2024, after a report that Plaintiff asked another inmate for something to cut himself with, Elbe and Zagar questioned Plaintiff using the ASQ screening questions. Plaintiff answered "yes" to wishing he were dead and refused to further respond. They placed him back in observation with fifteen-minute checks.

On September 1, 2024, after Sergeant LeNoble observed that Plaintiff had broken a meal tray lid, and considering Plaintiff's history of self-harm, staff again placed Plaintiff in a restraint chair for his own safety and logged fifteen-minute checks. Plaintiff was transferred to a cell with a suicide smock and continued to be observed every fifteen minutes. Each time they

learned that Plaintiff may be at risk of harm based on his words or actions, FCJ officers placed Plaintiff in either a restraint chair or on suicide watch. Plaintiff was screened each time before being placed in observation.

Lewis visited Plaintiff on September 3, 2024, following his placement on suicide watch. She noted that Plaintiff "endorsed persistent presence of suicidal ideations" which previously had been established as Plaintiff's baseline during an August 20, 2024 ASQ interview with Lewis. Plaintiff did not have a current intent or plan to act. Lewis's note concludes that Plaintiff should "remain in current status for closer monitoring as behaviors exhibited pose imminent risk to safety."

On September 4, 2024, Plaintiff was taken to Aspirus Rhinelander Hospital for medical clearance for acceptance into Winnebago Mental Health Institution ("WMHI"). He was transported to WMHI and admitted on September 5, 2024, where he remained until September 9, 2024. WMHI diagnosed Plaintiff with "nonsuicidal self-injury, chronic." Plaintiff was discharged from WMHI at approximately noon and returned to the FCJ on September 9, 2024, where he was placed on suicide watch at approximately 3:41 p.m. Due to his status on suicide watch, FCJ officers observed Plaintiff at least every fifteen minutes.

The primary issue in this case is what happened following Plaintiff's return to FCJ. Plaintiff was on suicide watch on September 10, 2024. The County Defendants took steps to ensure Plaintiff did not have access to dangerous materials before and during times in observation. Forest County Sheriff's Office Suicide Prevention and Intervention policy identifies items including plastic bags, shoelaces, sheets, razors, pencils, and staples as potentially dangerous objects that suicidal inmates are prohibited from possessing. Nothing in the record demonstrates that FCJ officials were

supposed to remove eyewear from people placed in observation. Defendants provide that eyeglasses are not inherently dangerous, and instead FCJ considers prescription eyeglasses to be a medical device. Plaintiff's deposition testimony indicated that no official had ever taken his glasses from him during the booking and strip search process when entering jail. Plaintiff maintains that it is against common sense to allow a person with a significant history of suicide to possess glasses.

Plaintiff's vision is so poor that he applied for social security disability benefits citing, among other reasons, "blind or low vision" as one of his conditions. Plaintiff's deposition testimony, however, maintained that his poor vision was not the reason he applied for disability benefits. Plaintiff confirmed that he can only see about ten feet in front of him without glasses. Prior to the incident in question, there had never been an incident at Forest County Jail in which an inmate used eyeglasses to hurt himself. Plaintiff was allowed to have his eyeglasses each time he was on observation status or suicide watch at FCJ. All items that are commonly recognized to pose a potential risk to a suicidal inmate were removed from Plaintiff's possession, and he was monitored as required by policy. Each of the County Defendants met the standards and requirements established by the Wisconsin Law Enforcement Standards Board for jail officer training standards and requirements of training for correctional officers as of September 2024.

Lewis met with Plaintiff at his cell on September 10, 2024, between 10:00 to 11:00 a.m. She noted that Plaintiff "denied perceptual disturbances," that he "reported persistent, constant presence of suicidal/self-harm thoughts," but that he denied current intent/plan to harm self." Lewis also noted that Plaintiff could not "verbalize skills or

ability to keep self safe." Lewis attempted to provide skills, which Plaintiff declined. Lewis determined that Plaintiff should remain on watch due to his "impulsive unpredictable behavior coupled with recent significant self-injurious behavior prompting hospitalization & current mindset."

Roughly twelve hours after meeting with Lewis, while still on suicide watch, Plaintiff, using his prescription glasses, caused a four-to-five inch cut on the inside of his thigh. Plaintiff was removed from his cell and taken to the hospital for sutures, eventually returning to FCJ. Defendants maintain that the standard of care in a correctional setting requires a qualified mental health provider to exercise professional judgment in recommending utilizing the least restrictive means available to ensure a patient's safety. If an individual is provided a medically necessary device, such as glasses, the standard of care requires that the patient be permitted to keep that medical device until the patient has established by word or action that the device represents a hazard to the patient's health, safety, and security, and the patient will not be unnecessarily inconvenienced by the removal of the device.

## 3. ANALYSIS

Defendants brought motions for summary judgment seeking dismissal of all three claims in this case. The Court will analyze each claim separately below. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendants' motions for summary judgment on the federal claims, declines to exercise supplemental jurisdiction over the state law claim, and will dismiss this case.

### 3.1 Claims Against Individual Defendants

To begin, the parties dispute whether the Fourteenth Amendment or the Eighth Amendment applies to Plaintiff's claims against the individual defendants. The Court allowed the case to proceed on a Fourteenth Amendment claim because Plaintiff's status at the time of screening was somewhat unclear and it is the more lenient standard. The Court noted, however, that Defendants were free to argue that another standard should apply instead. ECF No. 43 at 10 n.1. Defendants now argue the Eighth Amendment should apply because Plaintiff was arrested based on a probation violation and Plaintiff was on probation as part of a sentence for his conviction. ECF No. 90.

The Seventh Circuit has not yet clearly decided whether claims by a pretrial detainee who is also on a probation hold fall under the Eighth Amendment or the Fourteenth Amendment. *See Barbuto v. Ronquillo-Horton*, No. 22-C-569, 2024 WL 4056617, at *3–4 (E.D. Wis. Sept. 5, 2024). *Barbuto,* provided a detailed explanation of the two different standards and their significance given recent Supreme Court jurisprudence. *Id.* It is indeed an important question, and one that could be significant depending on the facts of a particular case. Here, however, the Court need not decide the appropriate standard because whether Plaintiff's claims are analyzed under the Eighth or Fourteenth Amendment "ultimately makes no practical difference" in the resolution of this case because Plaintiff has failed to demonstrate that Defendants' actions were "objectively unreasonable." *See Est. of Mouradian v. Jackson County*, No. 25-2132, 2026 WL 2075898, at *5 (7th Cir. July 17, 2026). The Court will therefore limit its analysis to the more lenient Fourteenth Amendment standard.

Following the Supreme Court's decision in *Kingsley v. Hendrickson*, the Seventh Circuit has concluded that the standard under the Fourteenth Amendment governing the failure to provide medical or other care is "objective reasonableness." *Miranda v. County of Lake*, 900 F.3d 335, 352–54 (7th Cir. 2018). Under that standard, as recently clarified by the court in *Pittman v. Madison County*, 108 F.4th 561, 566 (7th Cir. 2024), once a pretrial detainee proves that the defendant officer's failure to act was purposeful and intentional, the sole question is an objective one: did the defendant "take reasonable available measures to abate the risk of serious harm?" *Pittman*, 108 F.4th at 572. As the court emphasized, "[t]he objective reasonableness of a decision to deny medical care ... does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570. "In other words, a [plaintiff] satisfies this standard by putting forth evidence that reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Est. of Mouradian*, 2026 WL 2075898, at *5 (quotations omitted).

In *Estate of Mouradian*, the Seventh Circuit recently affirmed a district court's decision granting summary judgment to jail officials in a tragic case involving an inmate's suicide. *Id.* The medical expert for the estate plaintiff "testified that he 'could not comment on [ ] other reasonable professional[s]' and would not offer 'a conclusion about' whether a reasonable professional in [the defendant medical provider's] shoes would have acted similarly." *Id.* at *6. The court found that this left the plaintiff "without any evidentiary proof to challenge the appropriateness of [the defendant medical

provider's] conduct." *Id.* The court therefore concluded that there was "no evidence from which a reasonable juror could conclude that a reasonable professional in [the defendant medical provider's' shoes would have responded differently." *Id.*

Here, Defendants do not argue that Plaintiff did not have an objectively serious medical need requiring a level of treatment needed to avoid a substantial risk of harm. The question is instead whether the care Defendants provided to prevent the harm was objectively reasonable. The Court begins with Lewis as the most involved defendant in determining Plaintiff's treatment needs. Lewis met with Plaintiff at his cell approximately twelve hours prior to Plaintiff harming himself. She noted that Plaintiff "reported persistent, constant presence of suicidal/self-harm thoughts," but that he denied current intent/plan to harm self." Lewis also noted that Plaintiff could not "verbalize skills or ability to keep self safe." Lewis attempted to provide skills, which Plaintiff declined. Lewis determined that Plaintiff should remain on watch due to his "impulsive unpredictable behavior coupled with recent significant self-injurious behavior prompting hospitalization & current mindset." Plaintiff maintains that Lewis, based on common sense, should have told jail officials to remove his glasses from his possession based on this interaction and his suicide history.

The Court finds that Plaintiff's claim fails based on a lack of evidence from which a reasonable juror could conclude that a reasonable professional in Lewis's shoes would have removed Plaintiff's glasses from his possession. It is undisputed that Defendants did not remove Plaintiff's glasses from his possession after he was placed in observation status. However, Plaintiff presents no evidence that Lewis or other jail staff should

have treated Plaintiff's glasses as a dangerous item that needed to be removed for his safety. Indeed, Plaintiff himself indicated that his glasses had never been removed from his possession before despite his history of suicidal thoughts and self-harm. The record further indicates that FCJ had never had any incidents of inmates using glasses to self-harm.

Hindsight is, of course 20/20, and Plaintiff did in fact harm himself with his glasses in this instance. However, the fact that Plaintiff harmed himself with his glasses is "not evidence that they were inherently dangerous." *See Whitelaw v. Kootz*, No. 17-C-111, 2017 WL 448599, at *2 (E.D. Wis. Feb. 2, 2017) (finding that a pair of socks was "not so inherently dangerous that it should be considered an implement of suicide or self-harm"); *see also Thomas v. Hunt*, No. 25-CV-1316-BHL, 2025 WL 3296169, at *2 (E.D. Wis. Nov. 26, 2025) (finding there was "nothing inherently dangerous about a pen"). Without any evidence presented to the contrary, medically prescribed glasses are not so inherently dangerous that a reasonable prison official would have necessarily removed them from Plaintiff's possession in observation status. Based on the undisputed facts, the Court therefore finds that no reasonable jury could find that Lewis's care for Plaintiff was objectively unreasonable. The Court will accordingly grant Lewis's motion for summary judgment on the failure to protect claim.

For largely the same reasons, the Court similarly finds that no reasonable juror could find that the County Defendants acted objectively unreasonably to treat Plaintiff's risk of self-harm. The jail's suicide and intervention policy identified items including plastic bags, shoelaces, sheets, razors, pencils, and staples as potentially dangerous objects that suicidal inmates are prohibited from possessing. Nothing in the record demonstrates that FCJ officials were required to remove eyewear from

individuals placed in observation. The record indicates that the County Defendants took care to remove these known dangerous items from Plaintiff's possession. The County Defendants responded to Plaintiff's risk of self-harm by placing him on observation status with staff checking on his well-being at least every fifteen minutes. Nothing in the record indicates that any defendant had any indication that Plaintiff's possession of his glasses posed a significant risk to his safety. As discussed above, Plaintiff has presented no evidence suggesting that the decision not to remove his glasses was objectively unreasonable. The County Defendants reasonably relied on Lewis's assessment of Plaintiff after he arrived back to FJC and the decision to place him back on observation. Again, Plaintiff has presented no evidence that no reasonable official would have responded to Plaintiff as the County Defendants did. As such, the Court will accordingly grant summary judgment as to the County Defendants on the failure to protect claim as well.

The Court notes that it is, of course, unfortunate that Plaintiff was injured in this instance. However, the constitution does not demand perfection, and inmates with self-harm issues present particular challenges for prison officials to keep inmates safe. *See Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. 2009) (noting that a suicidal inmate presents prison officials with "a dilemma with no easy options"). Defendants present evidence here that the standard of care for individuals with medically necessary devices, such as glasses, *requires* that the patient be permitted to keep that medical device until the patient has established by word or action that the device represents a hazard to the patient's health, safety, and security. Plaintiff has presented no evidence that this standard of care was objectively unreasonable. Nothing in the record indicates that Plaintiff ever

gave jail staff any reason to believe Plaintiff's glasses posed a hazard to his safety. Moreover, in this instance, Defendants may have been subject to a different constitutional claim had they taken his glasses and prevented him from seeing for a substantial period of time. *See* Whitelaw, 2017 WL 448599, at *2 (noting that "prison staff must consider the fact that they might be subject to suit if they *fail* to allow socks under such circumstances.") (emphasis in original). Defendants' decisions regarding Plaintiff's care may not have been perfect; however, nothing in the record indicates that their conduct rose to the level of a constitutional violation.

In sum, the Court finds that no reasonable juror could find that either Lewis's or the County Defendants' actions were objectively unreasonable to prevent Plaintiff's risk of self-harm. The Court will accordingly grant Defendants' motions for summary judgment on the failure to protect claim against the individual defendants.[1]

### 3.2 *Monell* Claim

Plaintiff also brought a *Monell* claim against Forest County for its alleged failure to train employees. ECF No. 43 at 8. Based on the Court's analysis above, however, Plaintiff's *Monell* claim must be dismissed because there is no underlying constitutional violation. To be liable for an unconstitutional policy, "[t]he municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation, which a plaintiff may show directly by demonstrating that the policy is itself unconstitutional." *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). "[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot

[1]Defendants also moved for summary judgment based on qualified immunity. Because the Court grants summary judgment on the merits, the Court need not reach the question of qualified immunity.

be supported." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); *see also Est. of Mouradian*, 2026 WL 2075898, at *6 ("And without demonstrating an underlying constitutional violation, we do not reach the 'policy or custom' inquiry of *Monell*."); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). The Court has already concluded that Plaintiff failed to demonstrate that a constitutional violation occurred. Because Plaintiff has suffered no violation of his rights, there can be no municipal liability. Moreover, the Court notes that Plaintiff has provided no evidence in support of his *Monell* claim other than vague and conclusory statements. Accordingly, the Court will grant the Defendants' motion for summary judgment on the *Monell* claim.

### 3.3 State-Law Negligence

As noted above, Plaintiff has alleged a state-law negligence claim against the individual defendants, the intricacies of which need not be elaborated on because the Court declines to exercise supplemental jurisdiction over that claim. *See Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims."). As such, the Court relinquishes jurisdiction over Plaintiff's state-law negligence claim, which will be dismissed without prejudice.

## 4. CONCLUSION

For the reasons explained above, the Court grants Defendants' motions for summary judgment as to the individual defendants' failure to protect claim and the *Monell* claim; the Court dismisses these claims on the

merits with prejudice. Additionally, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim and thus will dismiss this claim without prejudice. Finally, the Court will deny Plaintiff's motion for the appointment of counsel, ECF No. 100, as moot. The Court previously provided a full analysis of its decision to deny Plaintiff's prior motions to appoint counsel, *see* ECF No. 75, and Plaintiff's renewed motion did not provide any information to change that prior determination regarding counsel. The Court has carefully reviewed the record and finds that Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that the County Defendants' motion for summary judgment, ECF No. 89, and Defendant Lewis's motion for summary judgment, ECF No. 93, be and the same are hereby **GRANTED** as provided in this Order;

**IT IS FURTHER ORDERED** that Plaintiff's motions to extend time and to reopen discovery, ECF Nos. 102, 105, 107, be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for relief from judgment, ECF No. 113, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 100, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's failure to protect claim against the individual defendants and the *Monell* claim be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c), declines to exercise supplemental jurisdiction over Plaintiff's

state-law negligence claim, and the state-law negligence claim be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.